UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TRONDO HUMPHREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00764-JRS-TAB |
| | ) | |
| CITY OF ANDERSON, | ) | |
| COUNTY OF MADISON, | ) | |
| TERRY SOLLARS, | ) | |
| RODNEY CUMMINGS, | ) | |
| UNKNOWN CITY OF ANDERSON | ) | |
| POLICE OFFICERS, | ) | |
| STAN YOUNG, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry and Order on Motion to Dismiss (ECF No. 64)**

Trondo Humphrey was charged with and convicted of the 1995 murder of Benjamin Laughlin[1] in Anderson, Indiana.  He was sentenced to sixty years' incarceration.  His conviction was affirmed on direct appeal.  *Humphrey v. State*, 680 N.E.2d 836 (Ind. 1997) ("*Humphrey I*").  Fifteen years later, Humphrey filed a petition for post-conviction relief based on a claim of ineffective assistance of trial counsel.  The Indiana Supreme Court held that trial counsel had rendered Humphrey ineffective assistance and remanded for a new trial.  *Humphrey v. State*, 73 N.E.3d 677 (Ind. 2017) ("*Humphrey II*").  The Madison County Prosecutor's office dropped all charges against

---

[1] Defendants' brief indicates that the victim's name was "Laflin," not "Laughlin."  However, the Court uses the name employed by both Humphrey's Complaint and the Indiana Supreme Court opinions.

Humphrey.  After serving more than twenty-one years of his sentence, he was released in September 2017.

Humphrey brought this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights and supplemental state law claims.  Defendants City of Anderson, Terry Sollars, and Stan Young move to dismiss the Amended Complaint (the "Complaint") for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court grants in part and denies in part the motion to dismiss.

## I. Dismissal Standard

A complaint must contain a short and plain statement showing that the pleader is entitled to relief.  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  "To meet this standard, a plaintiff is not required to include 'detailed factual allegations.'"  *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013).  The statement of the claim need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

To survive a motion to dismiss, the factual allegations must "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. Courts "take all the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, and draw all reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Courts, however, need not accept the truth of mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. "[I]f a plaintiff pleads facts that show its suit [is] barred . . . it may plead itself out of court under a Rule 12(b)(6) analysis." *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019) (quoting *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995)).

## II. The Complaint's Allegations

The following factual background is taken from the Complaint's allegations, which are accepted as true with all reasonable inferences drawn in Humphrey's favor.

Trondo Humphrey was fifteen years old when he was accused of a murder he alleges he did not commit. His case was tried to a jury and he was convicted. He spent more than 21 years in prison before he was released. (First Am. Compl. (hereinafter "Compl.") ¶ 1, ECF No. 56.)[2] Defendants Terry Sollars and Stan Young were police officers with the Anderson, Indiana police department. Defendant Rodney Cummings was a prosecutor with the Madison County Prosecutor's Office. (Compl. ¶ 11.)

On April 28, 1995, Benjamin Laughlin and Stephen Sites drove in a blue pickup truck from Elwood, Indiana to Anderson, Indiana to obtain cocaine. (*Id.* ¶ 14.) According to Sites, at some point in the evening, a man got into the truck to sell them

---

[2] Plaintiff has filed another First Amended Complaint (ECF No. 76), but the only difference in the two complaints is that the more recent complaint corrects a typographical error in the caption. No other changes were made, and the allegations are the same in both complaints.

drugs. Words were exchanged, and the man shot Laughlin in the torso, causing his death. (Compl. ¶ 15.) Sites could provide only a very limited description of the shooter and was never able to identify anyone as the man who shot Laughlin. (*Id.* ¶ 16.) No physical evidence was derived from the crime scene, and no physical evidence ever connected Humphrey to the crime. (*Id.* ¶ 17.)

Having "very little information from . . . on which to rely, Defendants instead fabricated and manipulated evidence against" Humphrey. (*Id.* ¶ 19.) In the spring of 1995, Defendants had no leads regarding who murdered Laughlin. (*Id.* ¶ 20.) Defendants agreed to frame Humphrey for the Laughlin murder and to thereby deprive him of his constitutional rights and liberty. (*Id.* ¶ 76.)

Despite lacking any reliable basis for suspecting that Humphrey or Roosevelt Brooks knew anything about the shooting, Defendants sought out Brooks, an acquaintance of Humphrey's, and harassed him with repeated questioning. (*Id.* ¶ 22.) Brooks denied knowing anything about the murder because he did not witness it. (*Id.* ¶ 23.) Defendants increased the pressure on Brooks by bringing him to the police station for questioning about the homicide on multiple occasions, but Brooks continued to profess his ignorance about the murder. (*Id.* ¶¶ 24, 25.) Defendants falsely told Brooks they "knew" that Humphrey committed the murder and pressured him to implicate Humphrey as Laughlin's killer. (*Id.* ¶ 26.) They had no evidence against Humphrey and no justification for claiming they knew he murdered Laughlin. (*Id.* ¶ 27.) Brooks gave in to the pressure and falsely implicated Humphrey in the murder. (*Id.* ¶ 28.)

Cummings participated in the interrogation and coercion of Brooks. (*Id.* ¶ 29.) Despite "knowing" that Humphrey was innocent, Cummings pressured Brooks to falsely implicate Humphrey, placing his face inches from Brooks's face and calling Brooks names when he refused to implicate Humphrey. (*Id.*) Cummings used other coercive and improper means during Brooks's interrogation to induce him to falsely implicate Humphrey. (*Id.*) Defendant Officers[3] were present during Cummings's coercive and frightening interrogation but they did not stop Cummings. Instead, they also used threats and undue pressure, including repeatedly accusing Brooks of lying each time he tried to tell the truth, to cause Brooks to implicate Humphrey, "even though they knew that Mr. Humphrey was innocent." (*Id.* ¶ 30.) In turn, Cummings was present for the Defendant Officers' coercion of Brooks and joined their efforts too. (*Id.*) Defendants jointly coerced Brooks's false inculpatory statements as part of the criminal investigation. (*Id.* ¶ 31.) While coercing Brooks, no Defendant had probable cause to suspect Humphrey had anything to do with the Laughlin murder. (*Id.*) Brooks had no knowledge that Humphrey committed the murder. (*Id.* ¶ 32.) Humphrey "was completely innocent of the crime." (*Id.*)

Before trial, Brooks provided an affidavit recanting the statement that Defendants elicited from him. (*Id.* ¶ 33.) Believing that they needed corroboration for Brooks's fabricated story, Defendants pressured another witness, Donnie Smith, to corroborate Brooks's story. (*Id.* ¶ 34.) Defendants approached Smith in August 1995, four months after the Laughlin murder, and interrogated Smith about the murder.

---

[3] The Complaint's reference to "Defendant Officers" is to Sollars, Young, and the Unknown City of Anderson Police Officers. (Compl. ¶ 13.)

(*Id.* ¶ 35.) Smith truthfully told them he had no knowledge of the murder and he had no idea where he had been on the night of the murder as he had no reason to remember a random evening from over four months ago. (*Id.*) Defendants pressured Smith to falsely claim that on the night of the murder he was with Humphrey in a garage near 14th and Nichol, that he saw a blue pick-up truck, that Humphrey was selling drugs that night, that he heard the tires of the car screech as the car pulled away, and that he heard Humphrey say the occupants of the truck tried to rip him off. (Compl. ¶ 36.) "None of the lies told by Smith actually happened, and the Defendants knew that when they coerced Smith to say them." (*Id.* ¶ 37.)

Because of Defendants' misconduct, the case against Humphrey proceeded to trial. (*Id.* ¶ 38.) The only evidence used to charge Humphrey was the fabricated statements from Brooks and Smith. (*Id.* ¶ 38.) At trial, Brooks testified that Defendants pressured him to give the statement falsely implicating Humphrey. (*Id.* ¶ 39.) Brooks stood by his pretrial affidavit explaining that his statement to police was false. (*Id.* ¶ 40.) Nonetheless, based on Brooks's coerced statement and Smith's fabricated testimony that purported to corroborate Brooks's false statement, the jury convicted Humphrey. (*Id.* ¶ 40.) The judge sentenced Humphrey to sixty years in prison. (*Id.* ¶ 43.) His conviction was affirmed on direct appeal.

In 2017, Humphrey filed a petition for post-conviction relief, challenging the trial court's admission of Brooks's pretrial statement. (*Id.* ¶ 44.) The Indiana Supreme Court acknowledged that Brooks testified at trial that the statement was "fabricated due to police pressure." The Court concluded that "[o]n the record before us it is

6

abundantly clear that the only evidence identifying Trondo Humphrey as the person committing the murder of Benjamin Laughlin was Brooks' out-of-court written statement improperly admitted at trial as substantive evidence." (*Id.* ¶ 45.) The Indiana Supreme Court remanded for a new trial. The Madison County Prosecutor's office dropped all charges against Humphrey. He walked out a freeman in September 2017. (*Id.* ¶ 46.)

### III. Discussion

Humphrey brings his claims under § 1983 alleging that Defendants violated his due process rights to a fair trial under the Fourteenth Amendment, subjected him to malicious prosecution, and detained and incarcerated him without probable cause in violation of his Fourth Amendment rights. He also alleges that Defendants failed to intervene in violation of his constitutional rights and conspired to deprive him of his constitutional rights. Humphrey brings a state-law claim for indemnification against the City of Anderson.

An official acting under color of state law may be held liable under § 1983 if he "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see also Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012) (noting that § 1983 liability is premised on personal responsibility). To be held liable, "the official's act must both be the cause-in-fact of the injury and its proximate cause." *Hoffman v. Knoebel*, 894 F.3d 836, 841 (7th Cir. 2018) (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012)).

## A. Due Process Right to a Fair Trial, Malicious Prosecution, and Wrongful Pretrial Detention – Counts I, II and III

Count I alleges that Defendants violated Humphrey's due process rights to a fair trial under the Fourteenth Amendment by fabricating inculpatory evidence, knowing it was false, and by deliberately withholding exculpatory evidence. Count II alleges that Humphrey was denied due process because he was subjected to malicious prosecution. Count III alleges that he was detained and incarcerated without probable cause in violation of his rights under the Fourth Amendment and *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018), *cert. denied sub nom. City of Joliet, Ill. v. Manuel*, 139 S. Ct. 2777 (2019).

Defendants argue that Humphrey's claims against Sollars and Young related to his allegedly wrongful conviction and incarceration fail to state a claim because: (1) the jury in his criminal case was informed of Brooks's allegations that he had been coerced to falsely incriminate Humphrey in the Laughlin murder, and (2) Smith did not incriminate Humphrey in the Laughlin murder at trial. Defendants also argue that despite asserting claims about the fabrication of evidence, Humphrey has not and cannot plausibly allege that Defendant Officers fabricated witness testimony. Defendants maintain that the conclusory allegations they "knew" that Humphrey did not murder Laughlin are not entitled to the presumption of truth. Further, Defendants argue that judicial and collateral estoppel bar Humphrey from alleging that he was convicted based upon alleged coerced false testimony by Smith. In addition, Defendants argue that their alleged actions did not proximately cause Humphrey's pretrial detention or conviction. Furthermore, they contend that the existence of probable

cause defeats Humphrey's claims for a wrongful detention or malicious prosecution. Next, they challenge the claims related to Humphrey's pretrial detention as barred by the statute of limitations.  Finally, they argue that malicious prosecution claims are not cognizable under § 1983.

Humphrey responds that he has stated a claim for a violation of his Fourteenth Amendment due process right to a fair trial.  He argues that he has pleaded a due process violation based on Defendant Officers' fabrication of inculpatory evidence and deliberate withholding of exculpatory evidence.  Humphrey further argues that the use of Smith's testimony to convict him is a factual dispute and principles of judicial and collateral estoppel do not preclude him from alleging that he was convicted based upon Smith's testimony.  Furthermore, Humphrey asserts that Sollars and Young proximately caused his wrongful conviction and that there was no probable cause to arrest him.  And he maintains that his claims are not time barred and that he may bring a claim for malicious prosecution.

## 1. Fabrication of Evidence

Beginning with the fabrication of evidence, "law enforcement officers 'may not knowingly use false evidence, including false testimony, to obtain a tainted conviction.'"  *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 344 (7th Cir. 2019) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  "Using false evidence to convict violates a defendant's right to a fair trial guaranteed by the Fourteenth Amendment's Due Process Clause."  *Id.*  In order to state a claim based on the fabrication of evidence, Humphrey

must allege not only that Brooks's statements were false, but also that Defendants knew the statements were false. *See id.*

Humphrey alleges Defendant Officers had no evidence against him and that they used threats and undue pressure to cause Brooks to implicate Humphrey, "even though they knew that [he] was innocent." (*Id.* ¶ 30.)  Humphrey alleges that the officers falsely told Brooks they "knew" that Humphrey committed the murder and pressured him to implicate Humphrey.  He further alleges that Brooks recanted his pretrial statement and stood by his pretrial affidavit stating that his statement to police was false.  Humphrey also alleges that Smith told lies and that Defendants knew that none of the lies had happened when they coerced Smith to tell the lies.  Thus, the Complaint alleges what evidence was fabricated (Brooks's unsworn statement and Smith's statement) and that the fabricated evidence was the only evidence used to charge Humphrey.  The Complaint also alleges that based on these fabricated statements, the jury convicted Humphrey.  While the Complaint generally alleges that Brooks's statement and Smith's statement were fabricated, that Defendants knew those statements were false, and that they knew Humphrey was innocent, these are factual matters that have been pleaded.  The Seventh Circuit has said that the "pleading burden should be commensurate with the amount of information available to [the plaintiff].  Courts "cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information [he] could not access without discovery." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528–29

(7th Cir. 2015).  Humphrey cannot be expected to plead the basis for Defendant Officers' knowledge absent discovery.

The Complaint's factual allegations have stated a claim that is plausible.  *See, e.g.*, *Alexander*, 721 F.3d at 424 (indicating that "public corruption" is "hardly unknown" and "egregious abuse of one's official position" is not "unthinkable").  Moreover, the Complaint gives Defendants "fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  That is sufficient to adequately state a due process claim based on the fabrication of evidence theory.

### 2.  Deliberate Withholding of Exculpatory or Impeachment Evidence

Humphrey also has sufficiently stated a due process claim based on the deliberate withholding of exculpatory or impeachment evidence.  "Police officers must provide exculpatory and/or impeachment evidence to prosecuting attorneys—a corollary to the prosecutor's obligation to disclose such evidence to defense counsel."  *Coleman*, 925 F.3d at 349 (citing *Brady* [*v. Maryland*], 373 U.S. 83 [(1963)]).  To state a claim against a police officer for an alleged failure to disclose such evidence, a complaint must allege: (1) the evidence at issue was favorable to the defense; (2) the officer concealed the evidence; and (3) the concealment prejudiced the defendant.  *See, e.g.*, *id.* "[A] claim that an officer coerced a witness to give incriminating evidence does not, at least standing alone, violate the wrongly convicted person's due-process rights." *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (internal quotation marks, citations and footnotes omitted).  Because coerced testimony may turn out to

be true, "the due-process right to a fair trial isn't implicated absent a violation of the *Brady* duty to disclose facts about the coercive tactics used to obtain it*." Id.*

Defendants assert that *Brady* does not "compel police officers to accurately disclose the circumstances of their investigations to the prosecution." (Defs.' Reply 3, ECF No. 74.)  The case cited as support, however, does not stand for such a broad proposition.  *See Sauders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015).  *Saunders-El* arises in a situation very different from that here.  In that case, the plaintiff brought a due process claim against police officers for fabricating evidence against him.  However, the defendant was released on bond after his arrest and acquitted at trial.  *Id.* at 558.  The Seventh Circuit held that "due process is not implicated when . . . the defendant is released on bond following his arrest and acquitted at trial," and "this rule cannot be circumvented . . . by re-framing such an allegation as a *Brady* claim—that is, by alleging that the police officers who supposedly fabricated the evidence failed to reveal their misconduct to the prosecution."  *Id.*  In contrast, Humphrey was detained and convicted at trial.

Defendants argue that the presence of Prosecutor Cummings at and participation in Brooks's coercive interrogation relieved the officers of their *Brady* disclosure obligations.  Generally, the *Brady* "rule encompasses evidence known only to police investigators and not to the prosecutor."  *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999); *see also Goudy v. Cummings,* 922 F.3d 834, 837 (7th Cir. 2019) ("Police officers generally discharge their *Brady* obligations by turning over such evidence to the prosecutors, who in turn have a duty to disclose the evidence to the defense.").  However,

the officers "must disclose exculpatory evidence to a 'competent authority,'" *Whitlock*, 682 F.3d at 576 (quoting *Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007)), and the disclosure of exculpatory evidence to a prosecutor who is alleged to have been part of a conspiracy to fabricate evidence does not discharge the *Brady* obligation.  *See id.* ("It is not likely that the police may take shelter behind a prosecutor who is conspiring with them to fabricate false evidence against innocent suspects.").  Thus, Cummings's presence at the coercive Brooks's interrogation did not satisfy the officers' Brady obligations.

Evidence is suppressed or concealed for *Brady* purposes "when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence."  *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008); *see also Avery*, 847 F.3d at 443 ("[E]vidence cannot be said to have been suppressed in violation of *Brady* if it was already known to the defendant.").  As Defendants point out, the Complaint alleges that Brooks was an acquaintance of Humphrey.  (Compl. ¶ 22, ECF No. 56.)  Thus, Defendants argue that the facts about the alleged coercion of Brooks were available to Humphrey through the exercise of reasonable diligence.  Humphrey did not respond to that argument and, in not doing so, he has waived a due process claim premised on the failure to disclose the coercive interrogation tactics used against Brooks.  *See, e.g., Lekas v. Briley*, 405 F.3d 602, 615 (7th Cir. 2005) (holding plaintiff waived § 1983 retaliation claim where he failed to present legal

arguments or cite relevant authority to substantiate that claim in responding to defendants' motion to dismiss).

In addition, Humphrey alleges that he knew Brooks and knew Brooks had given an inculpatory statement.  Indeed, the coercion of Brooks was known to Humphrey's trial counsel, who, three months before trial, prepared Brooks's affidavit recanting his pretrial unsworn statements.  *See, e.g.*, *Humphrey I*, 680 N.E.2d 841–42.  And Brooks testified at trial that he was coerced by the police pressure to fabricate his unsworn statement incriminating Humphrey in Laughlin's murder.  *Id.* at 838.  Even if Humphrey did not know all the coercive tactics used against Brooks, through the exercise of reasonable diligence, Humphrey could have discovered them.   Since Humphrey was aware of the alleged coercion of Brooks's unsworn statement in time to use it at trial, there can be no *Brady* claim based solely on the failure to disclose the coercion of Brooks.

Turning to Smith's testimony, Defendants argue that any coercion of Smith during the pretrial investigation is immaterial to Humphrey's fair trial claims because Smith's testimony "was not used at trial" and Smith did not implicate Humphrey as Laughlin's murderer at trial. (Defs.' Br. 11, ECF No. 65.)[4]  Defendants liken Smith's statements to the hypothetical fabricated statement that is put into a drawer and never used against the defendant, *see Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994) (supposing prosecutors tortured witness until he gave a statement and

---

[4] Curiously, later in the same brief in reference to Brooks and Smith, Defendants assert that "[t]wo witnesses identified Plaintiff as La[ugh]lin's murderer."  (Defs.' Br. 18; *see also id.* at 19–20 (noting that both Brooks and Smith incriminated Humphrey in La[ugh]lin's murder).)

then "put the transcript in a drawer" "but took no other step").  They further argue that Humphrey is estopped from alleging that he was convicted based upon coerced false testimony by Smith.  Defendants assert that Humphrey prevailed in the Indiana Supreme Court on the argument that he was prejudiced by his counsel's ineffective assistance because Humphrey could not have been convicted based on Smith's testimony alone.

Whether Smith's testimony alone was sufficient to convict Humphrey is a matter different from the matter of whether Smith's testimony was used against Humphrey at trial.  Humphrey has not taken an inconsistent position between his post-conviction proceeding and the instant action.  Further, the Indiana Supreme Court's decisions are clear that Smith did testify at Humphrey's trial, and the Court stated that Smith's testimony provided Humphrey with an opportunity to commit the murder. *See Humphrey II*, 73 N.E.3d at 689 ("Smith's testimony places Humphrey in the garage that evening and further demonstrates that Humphrey was selling drugs in the alley as well. . . .  Smith places Humphrey at the scene on the night Laughlin was shot, giving him an opportunity to commit the crime."); *Humphrey I*, 680 N.E.2d at 841 (stating that "[t]he State's case was wholly circumstantial and would have been extremely thin if Brooks' statement had not been before the jury as substantive evidence. . . .  Smith's testimony placed the defendant at the scene on the night of the killing . . . .").  Thus, Smith's testimony was used against Humphrey at trial, and Humphrey is not estopped from arguing that coerced false testimony by Smith was used to convict him.  The Complaint does not allege that the coercion of Smith was

disclosed before trial. Humphrey has adequately alleged a denial of his due process right to a fair trial based on the Defendant Officers' withholding of exculpatory or impeachment evidence regarding the coercion of Smith. *See, e.g.*, *Avery*, 847 F.3d at 439 (recognizing that a due process right may be implicated by a violation of the *Brady* duty to disclose facts about the coercive tactics used to obtain witness testimony).

In summary, the Complaint sufficiently alleges that Humphrey was denied his due process right to a fair trial based on the fabrication of inculpatory evidence as to Brooks's pretrial statement and Smith's testimony and based on Defendant Officers' deliberate withholding of exculpatory or impeachment evidence concerning the coercive interrogation of Smith. However, Humphrey has pleaded himself out of court under the theory based on Defendant Officers' failure to disclose the coercive interrogation of Brooks.

### 3. Proximate Cause

Defendants further contend that Humphrey has failed to state a claim for a denial of due process, malicious prosecution, unlawful arrest and detention in Counts I, II, and III because Defendant Officers' alleged actions did not proximately cause a deprivation of Humphrey's due process or Fourth Amendment rights. Defendants assert that it could not have been reasonably foreseeable that Brooks's statement, which was clearly hearsay, would be used against Humphrey at trial. They also assert that the independent actions of the prosecutor, trial judge, Humphrey's trial counsel, and the jury's decision to convict are all superseding causes that break the chain of

causation between the Defendant Officers and Humphrey's conviction.  Defendants further argue that the prosecutor's action related to pretrial detention relieves them of legal responsibility.  Humphrey responds that Defendant Officers' conduct proximately caused his wrongful conviction.

A § 1983 plaintiff may recover damages that are proximately caused by a constitutional violation.  *See Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1548 (2017) (plaintiffs can recover damages that are proximately caused by any Fourth Amendment violation).  "[G]enerally the issue of proximate cause is a jury question." *Shick v. Ill. Dep't of Human Servs.*, 307 F.3d 605, 615 (7th Cir. 2002) (noting that "in extreme circumstances . . . the question of proximate cause is an issue of law properly resolved by a court").  Defendants argue that the lawyers' and judge's actions regarding *Brooks's* statements constitute a superseding cause.  "A superseding cause is something culpable that intervenes . . . , some action of a third party that makes the plaintiff's injury an unforeseeable consequence" of the defendant's conduct.  *Whitlock*, 682 F.3d at 584 (emphasis and quotation omitted).  Generally, the issue of superseding cause "is not a pure legal question."  *See Jackson v. Curry*, 888 F.3d 259, 266 (7th Cir. 2018) (in the Fifth Amendment coerced-confession context).  And, "it is well settled that it is improper for a court to decide a question of fact on a motion to dismiss for failure to state a claim."  *Buschmann v. Prof'l Men's Ass'n*, 405 F.2d 659, 663 (7th Cir. 1969).

Humphrey has alleged that Brooks's coerced false statement and Smith's fabricated testimony that purported to corroborate Brooks's false statement were used to

convict him at trial.  (Compl. ¶ 40., ECF No. 56.)  It was certainly foreseeable that this fabricated evidence would be used to convict Humphrey at trial.  *See Avery*, 847 F.3d at 443 ("it was entirely foreseeable that this fabricated 'evidence' would be used to convict [the plaintiff] at trial for [the] murder").  As Humphrey submits, the point of fabricating evidence is for use at trial.  As another district court in the Seventh Circuit recently said, because of "the inherently speculative task of analyzing causation in fabrication claims, a relatively broad standard for causation applies."  *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1075 (N.D. Ill. 2018).  "If [the plaintiff] has pled that the fabricated evidence . . . furthered the prosecution, he has done enough."  *Id.* (citing *Hurt v. Wise*, 880 F.3d 831, 844 (7th Cir. 2018), *overruled on other grounds by Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019) (stating that it is sufficient to "show that the fabricated [evidence] furthered the prosecution")).  Just like the *Williams* plaintiff, Humphrey has satisfied the causation element.

Besides, the fabrication of evidence can cause harm to a defendant before trial.  *See Fields v. Wharrie*, 740 F.3d 1107, 1111–12 (7th Cir. 2014) ("He who creates the defect is responsible for the injury that the defect foreseeably causes later.  Nor is the only harm that resulting from the conviction and the sentence. . . . [A]s in our recent decision in *Julian v. Hanna,* 732 F.3d 842, 847 (7th Cir. 2013), the fabrication of evidence harmed the defendant before and not just during the trial, because it was used to help indict him.").  Humphrey has alleged that the fabricated statements from Brooks and Smith were the only evidence used to charge him with the murder.  (*Id.* ¶ 38.)  Although "civil *Brady* claims will be viable most often when a defendant has

18

been wrongfully convicted and imprisoned as a result of the *Brady* violation[ ] . . . the key to a civil *Brady* claim is not a conviction or acquittal but a deprivation of liberty." *Cairel v. Alderden*, 821 F.3d 823, 833 (7th Cir. 2016). Humphrey has alleged the denial of liberty based in part on the alleged *Brady* violations.

Furthermore, Defendants' proximate cause arguments focus on Brooks and essentially ignore Smith. (*See* Defs.' Br. 13–18, ECF No. 65.) The admission into evidence of Smith's allegedly false statement was reasonably foreseeable. There is no allegation that Smith's testimony was erroneously admitted. And there is no allegation that the jury was made aware of the alleged coercion of Smith. Defendants argue that coercion of a witness is only actionable by the criminal defendant when the alleged witness coercion resulted in an unfair trial. (Defs.' Br. 11 (citing *Buckley*, 20 F.3d at 794), ECF No. 65.) Though it may be difficult for Humphrey to prove that the failure to disclose the coercive interrogation tactics used on Smith proximately caused him any damages, Humphrey has sufficiently stated the claim so as to proceed beyond the pleading stage.

### 4. Malicious Prosecution Claims are Cognizable

Count II asserts a due process violation against the Defendant Officers under the theory of malicious prosecution. Defendants acknowledge that in *Julian v. Hanna*, 732 F.3d at 847–49, the Seventh Circuit authorized claims against Indiana police officers under § 1983 for malicious prosecution. Defendant Officers acknowledge that *Julian* is binding, but raise the issue to preserve it for appeal. They have preserved the issue for purposes of appeal.

### 5. Statute of Limitations

Defendants argue that even if Humphrey's conclusory allegations about whether Defendant Officers "knew" that Brooks's and Smith's statements were untrue, Humphrey's claims related to his arrest and pretrial detention in Counts II and III would still fail because they are barred by the applicable statute of limitations. Humphrey counters that this claim is not barred by the statute of limitations because it did not accrue until his release from custody. Humphrey has the correct view.

Because Humphrey's alleged injury occurred in Indiana, the Indiana two-year statute of limitations for personal injury actions is applicable to his § 1983 claims. *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994). Federal law, however, determines when a claim accrues. *Id.* A § 1983 claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* In *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) (*Manuel I*), the Seventh Circuit held that a Fourth Amendment wrongful detention claim accrues when the period of detention ends. *Id.* at 670 ("The wrong of detention without probable cause continues for the duration of the detention."), *cert. denied sub nom. City of Joliet, Ill. v. Manuel*, 139 S. Ct. 2777 (2019). Furthermore, even before Humphrey's prosecution and conviction, under *Heck v. Humphrey*, 512 U.S. 477 (1993), § 1983 could not "be used to contest ongoing custody that has been properly authorized" until the conviction has been set aside. *Manuel I*, 903 F.3d at 670. This is because success on the claim "would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Humphrey alleges that he was unlawfully detained based on fabricated evidence and

this same evidence was used to obtain his conviction.  Success on his § 1983 pretrial detention claim would have implied the invalidity of his conviction.  "The wrong of detention without probable cause continues for the duration of the detention.  That's the principal reason why the claim accrues when the detention ends." *Manuel I*, 903 F.3d at 670.

*Gonzalez v. Entress,* 133 F.3d 551 (7th Cir. 1998), cited by Defendants, does not change the analysis in this case.  *Gonzalez* involved a claim for false arrest and use of excessive force.  The plaintiff argued that *Heck v. Humphrey* postponed the accrual of his claim until his acquittal.  The Seventh Circuit disagreed because the claim did not necessarily imply that the plaintiff's conviction was unlawful.  *Id.* at 553.  Humphrey's detention ended when he was released from custody in September 2017.  He filed this action in February 2019, well within the two-year limitations period.  No previously extinguished claims against Defendants are being resurrected here.

Therefore, the Court concludes that the statute of limitations does not require dismissal of Counts II and III.

### 6.  Probable Cause for Arrest and Detention

Defendants argue that Defendant Officers had probable cause to believe that Humphrey murdered Laughlin, so the unlawful pretrial detention and malicious prosecution claims in Counts II and III fail.  Humphrey answers that his "allegations make clear that the evidence used to form the basis of probable cause was fabricated and therefore his claims may proceed."  (Pl.'s Br. 19, ECF No. 73.)

"[P]robable cause for an arrest exists 'if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime.'" *United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015) (quoting *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013)).  "[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *See Smith v. City of Chicago*, 913 F.3d 469, 473 (7th Cir. 1990); *see also Manuel*, 137 S. Ct. at 918 ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause."); *Anderson v. City of Rockford*, 932 F.3d 494, 512–13 (7th Cir. 2019) (A Fourth Amendment claim hinges upon showing the absence of probable cause to support plaintiffs' arrests and confinement).  But probable cause is no defense if probable cause was based on fabricated evidence.  *See Smith*, 913 F.3d at 473; *see also Williams*, 315 F. Supp. 3d at 1070 (stating that "pretrial detention unsupported by any probable cause—for example, where . . . the only basis for the plaintiff's detention was fabricated evidence—violates the Fourth Amendment").

Humphrey has sufficiently alleged facts to make a plausible claim that the officers fabricated evidence against him, knowing it was false.  Therefore, Humphrey's claims premised on malicious prosecution, unlawful arrest, and wrongful pretrial detention in Counts II and III against Defendant Officers may proceed.  Whether Humphrey can prove that Defendant Officers' conduct proximately caused him any damages must be determined another day.

### B. Failure to Intervene – Count IV

Count IV alleges the failure to intervene to prevent the violation of Humphrey's constitutional rights. Defendants argue that to the extent Humphrey alleges Defendant Officers failed to intervene to prevent him from being subjected to pretrial detention without probable cause, the claim fails based on the existence of probable cause to detain him and the claim is barred by the statute of limitations. The Court has already rejected those arguments, however. But Defendants further argue that to the extent Humphrey alleges that Defendant Officers failed to intervene to prevent a deprivation of his right to a fair trial, his claim fails because (1) the superseding cause of the "perfect storm of error" breaks any causal connection between the officers and Humphrey's conviction, (2) they had no opportunity to prevent the prosecutor from violating Humphrey's right to a fair trial. The question of whether there was a superseding cause that broke any chain of causation awaits an answer on another day, in a different procedural posture.

Under certain circumstances, a state actor may be held liable under § 1983 for the failure to intervene to prevent a constitutional violation. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). To state a claim for failure to intervene, a plaintiff must allege that the defendant: (1) knew that a constitutional violation was being committed and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017); *Yang*, 37 F.3d at 285. "Whether an officer . . . was capable of preventing the harm . . . is generally an issue for the trier of fact unless . . . . a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of E. Hazel*

*Crest, Ill.,* 110 F.3d 467, 478 (7th Cir. 1997). However, an officer cannot be liable for

another person's constitutional violation when the official had no ability to prevent

the underlying conduct. *See Hoffman v. Knoebel*, 894 F.3d 836, 842-43 (7th Cir. 2018)

(case manager's failure to secure placements for drug treatment participants where

case manager had no authority to end unlawful incarcerations).

According to Defendants, a police officer has no authority to direct a prosecuting

attorney to take or not take any action related to the prosecution of a criminal de-

fendant, so Defendant Officers could not have prevented Prosecutor Cummings or

Deputy Prosecutor Puckett from depriving Humphrey of his liberty or his right to a

fair trial, and the failure-to-intervene theory fails. Humphrey responds that when a

plaintiff alleges that he was deprived of his liberty as a result of the defendants' fab-

rication of evidence, it is plausible to infer that each defendant was aware of the dep-

rivation of liberty and could have done something to stop it. (Pls.' Resp. 21, ECF 73

(citing *Hurt*, 880 F.3d at 843).) *Hurt* says so: "It is plausible to infer from each de-

fendant's creation of false evidence that he was aware that the continuing incarcera-

tions were unsupported and could have done something to stop them." *Id.* Besides,

Defendant Officers could have intervened before the trial itself.

The Court has determined that Humphrey has sufficiently pleaded constitutional

violations, including a due process violation based on the fabrication of evidence

against him. The due process right not to be subjected to criminal charges based on

fabricated evidence was clearly established by 1995, *see, e.g.*, *Whitlock*, 682 F.3d at

575 (recognizing constitutional right not to have police fabricate evidence), so

24

Defendant Officers would have known that a constitutional violation was being committed.  In addition, the Court finds that Humphrey has sufficiently pleaded that Defendant Officers knew of the alleged constitutional violations and could have intervened.  (Compl. ¶ 72 ("During the alleged constitutional violations, one or more Defendants stood by without intervening to prevent the misconduct, despite having a reasonable opportunity to do so."), ECF No. 56.)  The efficacy of any such intervention must be decided at another time.

The Court concludes that Humphrey has sufficiently stated a failure-to-intervene claim against Defendant Officers in Count IV.

### C. Qualified Immunity

Defendant Officers contend that they are entitled to qualified immunity.  More specifically, they assert that Humphrey can identify no authority "clearly establishing in 1995 that a police officer could not rely on a witness statement obtained as the result of police coercion to support probable cause for an arrest.  Nor can [he] present any authority clearly establishing in 1995 that the use at trial of a witness statement obtained as the result of police coercion violates due process."  (Defs.' Br. 27, ECF No. 65.)  Humphrey responds that Defendant Officers are not entitled to qualified immunity because it was clearly established in 1995 that police officers who fabricate evidence violate due process.  He also argues that the duty to intervene to stop the fabrication of evidence was clearly established in 1995.

Although qualified immunity is an affirmative defense, it may be raised in a motion to dismiss.  *Lanigan,* 110 F.3d at 471.  A public official is entitled to qualified

immunity if (1) he did not violate the plaintiff's constitutional rights, or (2) the particular right at issue was not clearly established.  It is Humphrey's burden to show that Defendants violated a constitutional right that was clearly established at the relevant time.  *See, e.g., Perry v. Sheahan*, 222 F.3d 309, 315 (7th Cir. 2000).

"[I]t was established law by 1985 (indeed long before) . . . that . . . fabricating evidence against a criminal defendant was a violation of due process." *Fields*, 740 F.3d at 1114 (fabrication by a prosecutor); *see also Whitlock*, 682 F.3d at 580 (stating that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way") (citing *Jones v. City of Chicago,* 856 F.2d 985 (7th Cir. 1988)). Humphrey has alleged that Defendant Officers fabricated evidence, knowing it was false.

Furthermore, in *Buckley v. Fitzsimmons*, the Seventh Circuit held that coercing a witness, though a constitutional wrong, violates the witness's rights, not the criminal defendant's rights, unless the fact of coercion is concealed from the defendant.  20 F.3d at 794.  The duty to disclose exculpatory information was clearly established in 1995.  *See, e.g., Camm v. Faith*, 937 F.3d 1096, 1111 (7th Cir.  2019) (stating that "by 2000 it had been clear for decades that the governments *Brady* obligations include a duty to disclose impeachment evidence" and "it has long been clearly established that *Brady* obligations extend not just to prosecutors but also to investigators").  Humphrey has alleged a due process claim based on a *Brady* violation in the failure to disclose the coercion of witnesses.

Defendants also argue that it was not clearly established that police officers could be held liable for malicious prosecution. They err, however, in relying on the state of the law applicable to Section 1983 malicious prosecution claims instead of focusing on Defendants' alleged conduct. *See Fields*, 740 F.3d at 1114 ("when the question is whether to grant immunity to a public employee, the focus is on his conduct, not on whether that conduct gave rise to a tort in a particular case") (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982) (stating the test for qualified immunity "focuses on the objective legal reasonableness of an official's acts")).

Defendants concede that "[i]t was clearly established in 1995 that manufacturing false evidence against a criminal defendant is unconstitutional if the evidence is used against them in some way." (Defs.' Br. 31, ECF No. 65.) Humphrey has alleged that Defendant Officers fabricated evidence against him, knowing it was false, and that the same evidence was the basis for his conviction. Therefore, Defendant Officers are not entitled to qualified immunity on the claims that they fabricated evidence, deliberately withheld exculpatory or impeaching evidence, or failed to intervene in the violation of Humphrey's constitutional rights. This ruling, however, does not prevent Defendants from reasserting the defense of qualified immunity on a motion for summary judgment following further developments through discovery.

**D. Conspiracy Claim – Count V**

Count V asserts a § 1983 conspiracy claim. Defendants argue, in conclusory fashion and without citation to any authority, (Defs.' Br. 7, ECF No. 65), that a conspiracy claim is not a separate, independently actionable claim. Nonetheless, if all other

federal constitutional claims are dismissed, a § 1983 conspiracy claim must also be dismissed. *Katz–Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (affirming dismissal of § 1983 conspiracy claim where district court entered judgment on the pleadings in favor of defendants on some of federal claims and dismissed others for failure to state a claim). But here, the Court has *not* dismissed all other federal constitutional claims; some of those claims remain. Therefore, the Court declines to dismiss the § 1983 conspiracy claim in Count V.

### E. Indemnification Claim – Count VI

Count VI asserts a claim against Defendant City of Anderson based on the City's statutory obligation to indemnify any judgment for compensatory damages entered against Sollars or Young under Indiana Code § 34-13-4-1. (Compl. ¶¶ 8, 83–85, ECF No. 56.) Defendants argue that this claim is unripe and the Court lacks subject matter jurisdiction over it. Humphrey responds that the Court has subject matter jurisdiction.

A claim is unripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998) (internal quotation marks omitted). More specifically, an indemnification claim is not ripe (unless and) until liability has been established. *See, e.g.*, *Med. Assurance Co. v. Hellman,* 610 F.3d 371, 375 (7th Cir. 2010). Thus, the Court should dismiss an unripe indemnification claim. *See id.* (stating that district court should have dismissed unripe duty-to-indemnify claim rather than including it in the stay of the case); *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 693 (7th Cir. 1995) (concluding

district court correctly dismissed without prejudice the declaratory judgment action for duty to indemnify when the defendant's underlying liability had not yet been established).

Humphrey argues that the Seventh Circuit has held that a plaintiff may bring an indemnification claim before judgment is entered against the indemnitee, citing *Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997), as well as district court decisions. *Wilson* does not hold that an indemnification claim is ripe before a judgment is entered against the indemnitee.  Instead, in *Wilson*, the City had already made clear that it would not pay any judgment entered against its police officer, *id.* at 683; thus, a case or controversy existed between the parties sufficient for a ripe claim, *see id.* at 685.  *Wilson* recognizes an exception to the general rule that indemnification claims are not ripe until the underlying liability is established.  Further, the district court cases cited by Humphrey are not controlling.

The indemnification claim against the City of Anderson is unripe at this time.  Therefore, the Court finds that Count VI the claim for indemnification against the City of Anderson should be dismissed without prejudice.

## Conclusion

The Motion to Dismiss the First Amended Complaint (ECF No. 64) filed by the City of Anderson, Sollars, and Young is **granted in part and denied in part**.  The motion is **granted** with respect to the due process and malicious prosecutions claims in Counts I and II premised on the theory of the failure to disclose exculpatory or impeachment evidence regarding the alleged coercion of Brooks's statement and with

respect to the indemnification claim against the City in Count VI.  The indemnification claim is **dismissed without prejudice**.  The motion is **denied** with respect to the claims for the denial of Humphrey's right to a fair trial in Count I and malicious prosecution in Count II premised on the theories of fabrication of evidence and failure to disclose exculpatory or impeachment evidence regarding the alleged coercion of Smith; wrongful detention in Count III; the failure to intervene in Count IV; and the civil rights conspiracy in Count V.

 **SO ORDERED.**

Date: 6/8/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution via CM/ECF to all registered parties.